IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DOROTHY SIMPSON on behalf of herself and all others similarly situated,<br><br>　　Plaintiff Class,<br><br>v.<br><br>CLOVERLEAF APARTMENTS INVESTORS, LLC, STONEBRIDGE GLOBAL PARTNERS, LLC, and SELDIN COMPANY,<br><br>　　Defendants. | Case No. 4:22-cv-00520 |

## DEFENDANTS' JOINT NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, Defendants Seldin, LLC (d/b/a Seldin Company), Cloverleaf Apartments Investors, LLC ("Cloverleaf"), and Stonebridge Global Partners, LLC ("Stonebridge") (jointly "Defendants"), by their attorneys, give notice of removal of this action from the Circuit Court of Jackson County, Missouri to the United States District Court for the Western District of Missouri.

### Factual Background

1. On May 19, 2021, Plaintiff Dorothy Simpson (Plaintiff) filed a *Class Action Petition For Breach Of The Implied Warranty Of Habitability And Violations Of The Missouri Merchandising Practices Act* ("Initial Petition") in the Circuit Court of Jackson County, Missouri, styled *Dorothy Simpson v. Cloverleaf Apartments Investors, LLC, Stonebridge Global Partners, LLC, and Seldin Company,* Case No. 2116-CV11060.

2. A copy of all process, pleadings, and orders filed in this action are being filed contemporaneously herewith.

3. A true and correct copy of the Circuit Court of Jackson County docket as of August 10, 2022, is attached as Ex. A.

4. Plaintiff Simpson's lawsuit concerns the maintenance and condition of Cloverleaf Apartments in Kansas City, Missouri. Plaintiff Simpson is a tenant at Cloverleaf Apartments.

5. Cloverleaf Apartments is a 204 unit apartment complex located in Kansas City, Missouri. [Ex. B, Mizrahie Declaration.]

6. Cloverleaf Apartments is owned by Defendant Cloverleaf. Defendant Cloverleaf purchased the Cloverleaf Apartments on June 25, 2015.

7. Defendant Seldin served as Defendant Cloverleaf's managing agent from September 1, 2020, through September 15, 2021 and assisted with the management of the Cloverleaf Apartments during that time.

8. Defendant Stonebridge is the managing member of Defendant Cloverleaf.

9. Plaintiff's Initial Petition brought two claims against all Defendants jointly. Plaintiff alleged that Defendants breached the Implied Warranty of Habitability and the Missouri Merchandising Practices Act ("MMPA").

10. Plaintiff's Implied Warranty of Habitability claim sought "compensation for the rent paid during the period the home was uninhabitable." [Ex. C, Initial Petition, ¶ 85.]

11. Plaintiff's MMPA claims sought damages for "all rent paid during the tenancy," emotional distress, and reasonable attorneys fees. [Ex. C, Initial Petition, ¶¶ 110, 106-109.]

12. Plaintiff's causes of action are premised on the same underlying operative factual allegations, namely that the Cloverleaf Apartments were in such poor condition the apartments were uninhabitable. [Ex. C, Initial Petition ¶¶ 93-95 (identifying the factual basis for MMPA claim

as poor condition of the property); ¶¶ 78-79 (identifying the factual basis for the Implied Warranty of Habitability claim as the poor condition of the property)].

13. Plaintiff Simpson brought her claims as a class action against all Defendants.

14. Plaintiff Simpson's lease for the period of 6/1/2020 to 5/31/2021 is attached to the Initial Petition as Exhibit 2, and states that Plaintiff Simpson agrees to pay $148 per month under the lease. [Ex. C, Initial Petition, at Exhibit 2, ¶3.]

15. Plaintiff Simpson alleges that she has been a resident at Cloverleaf for over a decade, and has signed residential lease agreements with Cloverleaf since 2015. [Ex. C, Initial Petition, at ¶19.].

16. At the rate of $148 per month, it would take over 506 months of rent to reach an amount in controversy over $75,000. Thus, at the time of the Initial Petition, the amount in controversy was not over $75,000, and the case thus was not removable pursuant to ordinary diversity jurisdiction under 28 U.S.C. § 1332.

17. On November 29, 2021, the Circuit Court of Jackson County certified the class action and filed its Findings Of Fact, Conclusions Of Law, And Order Of Class Certification ("Class Certification Order"). [Ex. D, Class Certification Order, ¶ 42.]

18. The Plaintiff Class is defined as:

All Missouri residents who had a lease with Defendants at the Cloverleaf Apartments between July 2015 and the present. [Ex. D, Class Certification Order, ¶ 42.]

19. Simpson is the class representative. [Ex. D, Class Certification Order, ¶ 43.]

20. On April 14, 2022, Plaintiff Class filed the *Plaintiff Class Motion for Leave to File a First Amended Class Action Petition Adding Punitive Damages*.

21. Plaintiff Class's motion was briefed and heard before the Circuit Court of Jackson County, Missouri as to a punitive damage claim against Seldin only on July 5, 2022.

22. Plaintiff Class's motion to amend was granted and on July 11, 2022, Plaintiff Class filed its *First Amended Class Action Petition For Breach Of The Implied Warranty Of Habitability And Violations Of The Missouri Merchandising Practices Act* against All Defendants ("Amended Petition"). [Ex. E, Amended Petition.]

23. Plaintiff Class's Amended Petition states a new punitive damages claim against Defendant Seldin. [Ex. E, Amended Petition ¶¶ 113-114.]

24. With the exception of adding a punitive damages claim against Seldin, Plaintiff Class's Amended Petition largely repeats the facts and allegations stated in Plaintiff's Initial Petition. [Ex. E, Amended Petition ¶¶ 113-114.]

25. Plaintiff still has pending before the Circuit Court of Jackson County a fully briefed motion for leave to file an amended class action petition asserting punitive damages against Defendants Cloverleaf and Stonebridge.

## Removal is Proper Pursuant to the Class Action Fairness Act

26. Plaintiff Class's claims are removable because the Class Action Fairness Act (CAFA) provides the United States District Court for the Western District of Missouri with jurisdiction. *See* 28 U.S.C. §§ 1332(d), 1453. CAFA extends federal jurisdiction over private class actions in which: (1) any member of the proposed class is a citizen of a state different from any defendant (*i.e.*, minimal diversity exists); (2) the proposed class consists of more than 100 members; and (3) the amount in controversy is $5 million or more, aggregating all claims and exclusive of interests and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). Each of these requirements is met in the instant litigation.

<u>Minimal Diversity.</u>

27. Minimal diversity exists under CAFA because Plaintiff Class and Defendants are citizens of different states. *See* 28 U.S.C. § 1332(d)(2)(A).

28. Because there is complete diversity existing among all of the parties, none of the geographic exceptions to CAFA apply. More specifically, there are three geography-based exceptions to CAFA, which are commonly referred to as the mandatory "home state" exception (28 U.S.C. § 1332(d)(4)(B)), the discretionary "home-state" exception (28 U.S.C. § 1332(d)(3)), and the "local controversy" exception (28 U.S.C. § 1332(d)(4)(A)). See 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3724 (Rev. 4th ed.). All of these exceptions depend on having at least one of the defendants being citizens of the same state as the plaintiffs. As set forth below, none of the defendants are citizens of the same state as the Simpson Class.

29. Under 28 U.S.C. § 1332, an individual is a citizen of the state where the individual is domiciled – that is, the state where the individual is physically present and intends to remain. For diversity purposes, "the terms 'domicile' and 'citizenship' are synonymous" and mean the State where an individual is physically present and intends to make his or her home indefinitely. *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990). "The place where a [person] lives is properly taken to be [the] domicile until facts adduced establish the contrary." *Dist. Of Columbia v. Murphy*, 314 U.S. 441, 455 (1941).

30. For the purposes of diversity jurisdiction, under 28 U.S.C. § 1332, a limited liability company's citizenship is the citizenship of each of its members, and a corporation is deemed to be a citizen of the state (or foreign state) in which it was incorporated and the state (or foreign state) in which it has its principal place of business. *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC,* 932 F.3d 1102, 1104 (8th Cir. 2019).

31. "A trust's citizenship is based upon the citizenship of the trustee who is the real party in interest." *Armed Forces Bank, N.A. v. Gianulias*, No. 11-00974-CV-W-DGK, 2012 U.S. Dist. LEXIS 45253, at *5-6 (W.D. Mo. Mar. 30, 2012); *Alper v. Marsh, USA, Inc.*, No. 4:18 CV

378 CDP, 2018 U.S. Dist. LEXIS 60514, at *6 (E.D. Mo. Apr. 10, 2018) ("For a trust in the traditional sense — like we have here — the members are the trustees."); *Clark v. Sl W. Lounge, LLC*, No. 4:18-CV-01223-JCH, 2019 U.S. Dist. LEXIS 21604, at *7-8 (E.D. Mo. Feb. 11, 2019) (denying motion to remand because the trustees were not Missouri citizens and complete diversity existed); *see also France v. Thermo Funding Co., LLC*, 989 F.Supp.2d 287, 299 (S.D.N.Y. 2013) (finding that a traditional trust is primarily an estate planning tool, and holding that the citizenship of the trustees determines citizenship for the purpose of establishing diversity) (citing several Supreme Court cases); *Gwilt v. Harvard Square Retirement & Assisted Living*, 537 F. Supp.3d 1231, 1246 (D. Colo. 2021) (holding that for the purposes of diversity jurisdiction, the citizenship of a traditional trust, such as a trust for estate planning purposes, is the citizenship of its trustees).

32. For purposes of determining whether diversity jurisdiction exists, a corporation incorporated in a foreign country is deemed a citizen of its place of incorporation and the location of its principal place of business. *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 990 (9th Cir. 1994). A "corporation of a foreign State is, for purposes of jurisdiction in the courts of the United States, to be deemed, constructively, a citizen or subject of such State." *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 91 (2002); *see also Rigel v. Rosewood Hotels and Resorts, L.L.C.*, 2014 WL 6991331 at *3 (N.D.Tx. December 11, 2014).

33. Private limited companies that are organized under the laws of the United Kingdom are treated as corporations for the purposes of diversity jurisdiction. *SHLD, LLC v. Hall,* 2015 WL 5772261 at *2 (S.D.N.Y. September 29, 2015); s*ee also SNC-Lavalin Constructors Inc. v. Tokio Marine Kiln Insurance Limited*, 2021 WL 2550505 at *6 (D. Md. June 21, 2021) (holding that a U.K. private limited company should be treated as a corporation for diversity purposes, and

stating that "This conclusion follows the lead of many of the Court's sister district courts that have held that a U.K. private limited company is an analogue to a U.S. corporation."

34. A limited company that is organized under the laws of the British Virgin Islands is a "citize[n] or subjec[t] of a foreign state" for the purposes of alienage diversity jurisdiction. *JPMorgan Chase Bank*, 536 U.S. at 89, 99.

35. Courts have found diversity jurisdiction over private limited companies based on their principal place of business and place of incorporation. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1084 (11th Cir. 2010) (underwriter of Lloyds syndicate that was a private limited company properly plead citizenship by stating principal place of business and place of incorporation); *Novae Underwriting, Ltd. v. Cunningham Lindsey Claims Mgmt., Inc.*, 2008 WL 4542988 (N.D. Ill. Apr. 1, 2008) (finding diversity jurisdiction between Novae and its insured, a U.S. corporation).

36. For the analysis of the citizenship of foreign entities for the purposes of determining diversity, courts look to whether the entity is the equivalent of a corporation, or the equivalent of an unincorporated association. For example, if an entity is a corporation-equivalent, then the entity is deemed to be a citizen of the foreign state(s) where it is incorporated and where it has its principal place of business; if a foreign entity is an LLC-equivalent, then the entity's citizenship is determined by the citizenship of its members;. *See, e.g., SJ Properties Suites v. Specialty Finance Group, LLC*, 772 F.Supp.2d 1021, 1030–1031 (E.D. Wis.2010) (directing plaintiffs to clarify for purposes of determining diversity and subject matter jurisdiction with respect to two entities described as "private limited companies" and organized under Icelandic law); *see also, e.g., Simon Holdings PLC Group of Companies U.K. v. Klenz*, 878 F.Supp. 210, 211 (M.D. Fla.1995) (treating a private limited company "incorporated under the laws of the United Kingdom" as a corporation

for diversity and subject matter jurisdiction purposes pursuant to a determination of its citizenship under 28 U.S.C. § 1332); *Chok v. S & W Berisford, PLC*, 624 F.Supp. 440, 441 (S.D.N.Y.1985) (in which the court accepts the parties' agreement that a British private limited company "is a corporation formed under the laws of the United Kingdom," and therefore treats it as a corporation for purposes of diversity determination).

37. A Mauritius private limited company limited by shares is a business entity that is a separate legal entity from its shareholders. In other words, it can sue or be sued, and it has a legal personality (as opposed to a partnership or an unincorporated association.) *See Edokeda Trading Ltd. v. Merchant Nat., LLC*, 2013 WL 4876162 at *2 (D.N.J. September 11, 2013) (stating that the Plaintiff was a "private limited company incorporated in Mauritius", and noting that as a corporate entity, it could not proceed in the litigation without counsel).

38. A Singapore private limited company limited by shares is a business entity that is a separate legal entity from its shareholders. In other words, it can sue or be sued, and it has a legal personality (as opposed to a partnership or an unincorporated association). See Advantages and Disadvantages of Singapore Private Limited Company, Kaizen CPA, https://kaizencpa.com/Knowledge/info/id/410.html (last visited Aug. 5, 2022); see also Corporate Structures in Singapore, RIKVIN, https://www.rikvin.com/incorporation/corporate-structures-in-singapore/ (last visited Aug. 5, 2022); *Eggs 'N Things Intern. V. ENT Holdings LLC*, 2010 WL 2010 WL 5834799 at *7 (D. Hawaii Dec. 16, 2010) (noting without comment that complaint alleged diversity jurisdiction and that the plaintiff was alleged to be a "Singapore private limited company with its principal place of business in Singapore"). Thus, a Singapore private limited company is treated as corporations for the purposes of diversity jurisdiction.

Citizenship of Plaintiff

39. Plaintiff Simpson is a natural person who is domiciled at Cloverleaf Apartments, 14550 S. 71 Highway, Apt. 301, Kansas City, Missouri 64147, County of Jackson, Missouri. [Ex. E, Amended Petition, ¶ 9.]

40. The Simpson Class is also comprised exclusively of Missouri residents. [Ex. D, Class Certification Order, ¶ 42.]

Citizenship of Defendant Seldin

41. Defendant Seldin Company is d/b/a of Seldin, LLC.

42. Seldin, LLC is a multi-member Nebraska professional limited liability company. [Ex. F, Declaration of Powers.]

43. Seldin, LLC has the following members: (1) Robert Dean; (2) DCAM, LLC; and, (3) AP Employee Incentive Fund I, LLC. [Ex. F, Declaration of Powers.]

44. Robert Dean is a natural person and is domiciled in Nebraska. [Ex. F, Declaration of Powers.]

45. DCAM, LLC is a single member Delaware limited liability company. The sole member is Yonatan Dotan, who is a natural person and domiciled in Illinois. [Ex. F, Declaration of Powers.]

46. AP Employee Incentive Fund I, LLC, is a multiple-member Delaware limited liability company. The members of the AP Employee Incentive Fund I, LLC are: (1) the Howard Scott Silverman Gift Trust; (2) the Howard Scott Silverman Gift Trust No. 3; (3) Jeremy T. Smith; and (4) Howard Scott Silverman. Howard Scott Silverman is domiciled in Illinois. Jeremy T. Smith is domiciled in Nebraska. The trustee of Howard Scott Silverman Gift Trust and the Howard Scott Silverman Gift Trust No. 3 is the natural person Uri Ratner, who is domiciled in Oregon. The

beneficiary of the Howard Scott Silverman Gift Trust and the Howard Scott Silverman Gift Trust No. 3 is the natural person Howard Scott Silverman.

47. Therefore, Seldin LLC is a citizen for diversity purposes of Nebraska, Illinois, and Oregon.

48. Defendant Seldin is not a citizen of Missouri.

Citizenship of Defendants Cloverleaf and Stonebridge

49. Stonebridge is a limited liability company with two members: (1) Tricon Investments, LLC ("Tricon"), which is a limited liability company; and (2) Rivergate Investments, LLC ("Rivergate") which is a limited liability company. (See Ex. B, Mizrahie Declaration at ¶6). As set forth below, Stonebridge is a citizen of California. (Ex. B, Mizrahie Declaration at ¶6).

50. Tricon's sole member is Fouad M Al Katan. (Ex. B, Mizrahie Declaration at ¶7). Thus, Tricon is a citizen of California.

51. Rivergate's sole member is The Mizrahie Family Trust, d/o/e 6-5-2013 (the "Mizrahie Trust"), which is a traditional trust for estate planning purposes, and existing as a fiduciary relationship for facilitating donative transfers, with a sole beneficiary/sole trustee. (Ex. B, Mizrahie Declaration at ¶8). Eli J. Mizrahie is the sole trustee and beneficiary of the Mizrahie Trust, and Eli J. Mizrahie's address is 432 N Oakhurst Drive, Apt 207, Beverly Hills, CA 90210. (Ex. B, Mizrahie Declaration at ¶8). Thus, Rivergate is a citizen of California.

52. Cloverleaf is a limited liability company with several members. (Ex. B, Mizrahie Declaration at ¶9). The citizenship of those members are as follows.

53. Three of Cloverleaf's members are citizens of the United States (specifically, California): (1) Tricon; (2) Rivergate, and (3) the Zadeh Family Trust, dated September 8, 2011. (Ex. B, Mizrahie Declaration at ¶10).

54. As set forth above, Tricon and Rivergate are citizens of California. (Ex. B, Mizrahie Declaration at ¶7-8).

55. The Zadeh Family Trust, dated September 8, 2011, is a traditional trust for estate planning purposes, and existing as a fiduciary relationship for facilitating donative transfers, and the sole trustees and beneficiaries are Mani Zadeh and Sara Zadeh, who are both California Citizens, with an address of 220 S. Carmelina Ave., Los Angeles, California 90067. (Ex. B, Mizrahie Declaration at ¶12). Thus, the Zadeh family trust is a citizen of California.

56. Cloverleaf's remaining members are international investors who executed an Internal Revenue Service (IRS) W-8 Form and are citizens of foreign states (Ex. B, Mizrahie Declaration at ¶13.a-j), as detailed below:

    a. Ian Barrie Semp is an individual who is a citizen of Thailand, with an address of Domus 19/63 Soi 16, Klongtoi, Bangkok 10110 Thailand. (Ex. B, Mizrahie Declaration at ¶13.a).

    b. Innox Investments Ltd is a private limited company (limited by shares) incorporated under the laws of the United Kingdom, and it also has its principal place of business in the United Kingdom, with an address of 1-4 Argyll Street, London, W1F 7LD 02458 United Kingdom. (Ex. B, Mizrahie Declaration at ¶13.b). Thus, it is a citizen of the United Kingdom.

    c. Magic Seven Holding Enterprise Inc. is a limited company incorporated under the laws of the British Virgin Islands, and it also has its principal place of business in the British Virgin Islands, with an address of PO Box 958, Pasea Estate, Road Town, British Virgin Islands. (Ex. B, Mizrahie Declaration at ¶13.c). Thus, it is a citizen of the British Virgin Islands.

    d. Dormie Investments Ltd is a private limited company (limited by shares) incorporated under the laws of Mauritius, and it also has its principal place of business in

Mauritius, with an address of IFS Court, Twentyeight Cybercity, Ebene, Mauritius. (Ex. B, Mizrahie Declaration at ¶13.d). Thus, it is a citizen of Mauritius.

e. Frank Benjamin is an individual who is a citizen of Singapore, with an address of 9 Ardmore Park #28-04, Singapore, 259955 Singapore. (Ex. B, Mizrahie Declaration at ¶13.e).

f. Douglas Jackie Benjamin is an individual who is a citizen of Singapore, with an address of 245 Orchard Boulevard #02-02, Singapore, 248648 Singapore. (Ex. B, Mizrahie Declaration at ¶13.f).

g. Yeo Khirn Hai Alvin is an individual who is a citizen of Singapore, with an address of 8 Belmont Road, Singapore, 269856 Singapore. (Ex. B, Mizrahie Declaration at ¶13.g).

h. Yong Poh Kon is an individual who is a citizen of Malaysia, with an address of 4 Jalan Usahawan 6, Setapak Jaya, 53300 Kuala Lumpur, Malaysia. (Ex. B, Mizrahie Declaration at ¶13.h).

i. Daisy Tan is an individual who is a citizen of Malaysia, with an address of 24 Jalan Athinahapan 3 Taman Tun D, Ismail, 60000 Kuala Lumpur, Malaysia. (Ex. B, Mizrahie Declaration at ¶13.i). On December 31, 2018, Ms. Tan transferred her membership to Cosmotrade Limited, which is a limited company incorporated under the laws of the British Virgin Islands, and it also has its principal place of business in the British Virgin Islands, with an address of Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola VG1110 British Virgin Islands. (Ex. B, Mizrahie Declaration at ¶13.i). Thus, Cosmotrade Limited is a citizen of the British Virgin Islands.

j. Atlas Ice Enterprise (Investments) Pte Ltd is a limited private company (limited by shares) incorporated under the laws of Singapore, and it also has its principal place of

business in Singapore, with an address of 260 Orchard Road, #06-01 The Heeren, Singapore, 238855 Singapore. (Ex. B, Mizrahie Declaration at ¶13.j). Thus, it is a citizen of Singapore.

57. Neither Stonebridge nor Cloverleaf are citizens of Missouri.

58. Therefore, complete diversity exists between all the parties.

Number of Class Members

59. Cloverleaf Apartments is a 204 unit complex.

60. The Simpson class is certified from July 1, 2015 to present.

61. The Jackson County Circuit Court's Class Certification Order concluded that Plaintiff represented there were at least 204 class members. [Ex. D, Class Certification Order, ¶¶ 20-22.]

62. Based on Plaintiff's allegations and the Circuit Court's Class Certification Order, the Court can properly infer that the proposed class consists of more than 100 members and thus satisfies CAFA's requirement that the proposed class exceeds 100 members. See 28 U.S.C. § 1332(d)(5)(B).

Amount in Controversy

63. Under controlling Eighth Circuit precedent, CAFA's amount in controversy requirement "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400-02 (9th Cir. 2010)). The removing party "has the burden to establish 'not whether the damages [sought] are greater than the requisite amount, but whether a fact finder might legally conclude that they are.'" *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019) (quoting *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir. 2012)) (emphasis in original). "A removing defendant can establish federal jurisdiction with 'specific factual allegations … combined with reasonable deductions,

reasonable inferences, or other reasonable extrapolations.'" *Waters v. Ferrara Candy Co.,* 873 F.3d 633, 636 (8th Cir. 2017) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 753-54 (11th Cir. 2010)). When the removing party establishes that the class might recover actual damages, punitive damages, injunctive relief, and attorneys' fees "aggregating more than $5 million, 'then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.'" *Pirozzi*, 938 F.3d at 984 (quoting *Raskas*, 719 F.3d at 888).

64. Plaintiff Class's Implied Warranty of Habitability and MMPA claims seek duplicate damages in the form of rent paid by Cloverleaf Apartment tenants to Defendants from July 1, 2015, to present. See *supra* ¶¶ 9,10,11, 12.

65. Violations of the MMPA may also result in the plaintiff recovering compensatory and punitive damages along with attorney's fees. Mo. Rev. Stat. § 407.025.1.

66. Previously under Missouri law, punitive damages were limited to the greater of (1) $500,000 or (2) five times the combined sum of actual damages and attorney's fees. Mo Rev Stat. § 510.265, declared unconstitutional by *Lewellen v. Franklin*, 441 S.W.3d 136, 142-45 (Mo. 2014) (*en banc*). In *Lewellen*, the Supreme Court of Missouri held that legislatively capping how much a plaintiff can recover in punitive damages violated the plaintiff's right to a jury trial. See 441 S.W. 3d at 142-45. Therefore, under Missouri law it is now possible that plaintiffs may now recover more than five times the combined sum of actual damages and attorney's fees.

67. Punitive damages under the MMPA are based on combined compensatory damages and attorney's fees. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013)

68. The Simpson Class claims to be entitled to both compensatory and punitive damages as well as reasonable attorney's fees. [Ex. E, Amended Petition, WHEREFORE CLAUSE, pp. 17-18, 22.]

69. From 2015 to 2021, the total amount of rent receipts received by Defendants is about $931,298. [Ex. B, Mizrahie Declaration, ¶ 14.]

70. After applying a standard 33% attorney's fees recovery to these damages, there is the potential to recover attorney's fees in the amount of $307,328.34, which would therefore constitute a total of $1,238,626.34 in compensatory damages at issue in this case. *See Baker v. NNW, LLC and HY-VEE, Inc.*, No. 15-00222-CV-W-GAF, 2015 U.S. Dist. LEXIS 186050, at *4 (W.D. Mo. June 1, 2015) (applying 33% attorneys fee recovery to a CAFA MMPA case); *Faltermeier v. FCA US LLC*, No. 4:15-cv-00491-DGK, 2016 WL 10879705, at *4 (W.D. Mo. May 26, 2016) (attorney's fees could reach $1.4 million, representing 38.8% of compensatory damages, in putative MMPA class action removed under CAFA), *aff'd,* 899 F.3d 617, 622 (8th Cir. 2018); *Harrington Enters., Inc. v. Safety-Kleen Sys., Inc.*, 42 F. Supp. 3d 1197, 1201 (W.D. Mo. 2013) (same); *Schott v. Overstock*, No. 4:20-cv-00684-MTS, 2021 U.S. Dist. LEXIS 8353, at *11 (E.D. Mo. Jan. 15, 2021) (same).

71. The total of $1,238,626.34 leaves a difference of $3,761,373.66 to meet the jurisdictional CAFA threshold.

72. If a fact finder awarded punitive damages in the amount of 3.04 times the amount of compensatory damages, the amount-in-controversy requirement would be met.

73. For purposes of removal, courts routinely consider punitive damages ratios from 4:1 to over 6:1 for purposes of calculating the amount in controversy. *Baker*, 2015 WL 12843831, at *2 (applying multiplier of 4.8:1 to actual damages and attorney's fees totaling $860,936.44 to meet CAFA's $5 million threshold); *Harrington Enters.*, 42 F. Supp. 3d at 1201 (applying multiplier of 5:1 to actual damages and attorney's fees of $952,851.90 meet CAFA's threshold); *Kerr v. Ace Cash Experts, Inc.*, No. 4:10-cv-1645-DDN, 2010 WL 5177977, at *2 (E.D. Mo. Dec.

14, 2010) (applying multiplier of 6.3:1 on actual damages of $594,000 (and implicit 33% attorney's fees award) to meet CAFA's threshold); *Bass v. Carmax Auto Superstores, Inc.,* No. 07-0883- CV-W-ODS, 2008 WL 441962, at *2 (W.D. Mo. Feb. 14, 2008) (applying multiplier of 5.7:1 on actual damages of $658,431 and implicit 33% attorney's fees award to meet CAFA's threshold).

74. The Eighth Circuit has observed, in the context of calculating the amount in controversy under CAFA, that an MMPA judgment with a punitive damages ratio of 27:1 has been approved. *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019) (*citing Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1026 (8th Cir. 2000)); see also *Waters*, 2020 WL 1170248, at *6.

75. Therefore, Plaintiff Class seeks an amount in controversy in excess of $5 million. *See* 28 U.S.C. § 1332(d)(2).

## Timeliness

76. Section 1446(b) sets forth two thirty-day windows for removal based on pleadings, or other papers, provided by the plaintiff. First, Section 1446(b)(1) states:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .

28 U.S.C. § 1446(b)(1).

77. Second, Section 1446(b)(3) states:

> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Id. § 1446(b)(3).

4859-4372-4845.1

16

Case 4:22-cv-00520-BP   Document 1   Filed 08/10/22   Page 16 of 20

78. In the Eighth Circuit, in the CAFA context, "the thirty-day removal period set forth in § 1446(b)(3) does not begin to run until the defendant receives from the plaintiff an amended pleading, motion, order, or other paper 'from which the defendant can unambiguously ascertain" that the CAFA jurisdictional requirements have been satisfied.'" *Gibson v. Clean Harbors Envtl. Servs.*, 840 F.3d 515, 519 (8th Cir. 2016) (citations omitted).

79. Throughout this litigation, Plaintiff Class has never provided Defendants with a damage model or calculation of damages. Plaintiff Class answered discovery directed towards damage calculations as follows:

> 30. State specifically the damages of each class member with respect to the Cloverleaf Apartments as alleged in Your Petition, and include the amount and calculation of such damages.
>
> **ANSWER:** Plaintiff objects that Stonebridge has exceeded its allotment of twenty-five (25) interrogatories, including discrete sub-parts, under Rule 57.01(a). Without waiving her objection, Plaintiff states class-wide damages will be the subject of an expert opinion. Plaintiff will notify defendants pursuant to the terms of the scheduling order.

[Ex. G, Plaintiffs' Answers To Stonebridge First Interrogatories.]

80. Plaintiff Class has produced no expert report identifying the amount of class damages.

81. As explained above, at the time of filing of the Initial Petition, Plaintiff Simpson paid $148 a month in rent and her potential damages with a five-year statute of limitations were $8,880.00 ($148.00 x 60). Therefore, Plaintiff Simpson's Initial Petition was not removable. *See Lindsay Transmission, LLC v. Nationwide Gen. Ins.*, No. 14-0903-CV-W-ODS, 2015 U.S. Dist. LEXIS 191043, at *6 (W.D. Mo. Jan. 22, 2015) ("Altogether, then, Plaintiff's recovery is

approximately $10,217. Section 375.420 allows recovery of attorney fees — but it is not possible for Plaintiff's portion of that fee award to be enough to satisfy the jurisdictional amount.").

82. As explained above, the Plaintiff Class's compensatory damages are calculated at $1,238,626.34. Thus, the Plaintiff Class's damages were below the CAFA threshold until the Plaintiff Class successfully obtained leave to file an Amended Petition seeking punitive damages.

83. The Plaintiff Class filed the Amended Petition on July 11, 2022.

84. The Amended Petition is the first document from which the defendant can unambiguously ascertain that the CAFA jurisdictional requirements have been satisfied.

85. Therefore, removal is timely under 28 U.S.C. § 1446(b)(3).

## Compliance with Removal Statute

86. This Notice of Removal was properly filed in the United States District Court for the Western District of Missouri, because the Circuit Court of Jackson County, Missouri is located in this federal judicial district. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 93(a)(1).

87. The Amended Petition was served on Defendants on July 11, 2022. Accordingly, this Notice of Removal is timely filed within 30 days of service of the Amended Petition, pursuant to 28 U.S.C. § 1446(b).

88. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Defendants, as well as all those filed in this action, are being filed contemporaneously herewith.

89. Pursuant to 28 U.S.C § 1446(d), a copy of this Notice of Removal is being served on counsel for Plaintiff Class and a copy, along with a Notice of Filing of the Notice of Removal, is being filed with the Clerk of the Circuit Court of Jackson County, Missouri today.

90. This removal is effectuated jointly by all Defendants.

## Conclusion

Defendants respectfully request this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal.

/s/ Jeremy K. Schrag
Alan. L. Rupe, MO #50613
Jeremy K. Schrag, MO #70536
Karly D. Weigel, MO #70410
LEWIS BRISBOIS BISGAARD & SMITH LLP
4600 Madison Avenue, Suite 700
Kansas City, MO 64112
Telephone: (816) 299-4244
Facsimile: (816) 299-4245
alan.rupe@lewisbrisbois.com
jeremy.schrag@lewisbrisbois.com
karly.weigel@lewisbrisbois.com

*Attorneys for Defendant Seldin Company*

/s/ Daniel R. Zmijewski (w/consent)
Daniel R. Zmijewski, MO #54675
DRZ Law, LLC
8700 State Line Rd, Suite 305
Leawood, KS 66206
Telephone: (913) 400-2033
Facsimile: (833) 340-0437
dan@drazlawfirm.com

*Attorney for Cloverleaf Apartments Investors, LLC*

/s/ Mark A. Olthoff (w/consent)
Mark A. Olthoff, MO #38572
Polsinelli PC
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
Telephone: (314) 889-8000
Facsimile (314) 231-1776
molthoff@polsinelli.com

*Attorney for Stonebridge Global Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2022, I filed the above Notice of Removal using the Court's electronic filing system and served a copy by electronic mail to:

Gregory Leyh
gleyh@leyhlaw.com

Andrea M. Knernschield
aknernschield@leyhlaw.com

Nicholas Leyh
nleyh@leyhlaw.com

*Attorneys for Plaintiff*

                                                /s/ Jeremy K. Schrag
                                                Jeremy K. Schrag